UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| YOSSIED MANUEL MARTINEZ | PLAINTIFF |
| VERSUS | CIVIL ACTION NO. 1:15CV289-RHW |
| COMMISSIONER OF SOCIAL SECURITY | DEFENDANT |

**MEMORANDUM OPINION AND ORDER**

Yossied Manuel Martinez filed a complaint seeking review of the Commissioner of Social Security's decision that he was no longer disabled. Plaintiff initially applied for disability and disability insurance benefits alleging an onset date of May 18, 2011. The Commissioner found that Plaintiff met the requirements of Listing 13.13A1 based on residuals from glioma resection and seizure disorder following surgery performed in May 2011. On August 8, 2014, the Social Security Administration (SSA) conducted a continuing disability review of Plaintiff's case. The SSA determined that Plaintiff experienced medical improvement and was no longer disabled. By letter dated October 7, 2014, the SSA notified Plaintiff that his disability ceased as of October 2014. Plaintiff requested reconsideration of the decision. The SSA denied his request.

Plaintiff next requested a hearing before an Administrative Law Judge (ALJ). The ALJ conducted a hearing on May 8, 2015, and issued a decision May 21, 2015, finding that Plaintiff was not disabled. Doc. [6] at 16-24. The ALJ determined that Plaintiff did not develop any additional impairments subsequent to the date of disability. *Id.* at 18. However, the ALJ found that as of October 31, 2014, Plaintiff experienced medical improvement. *Id.* The ALJ concluded that there was a decrease in the severity of Plaintiff's impairments. *Id.* Plaintiff's conditions remained severe, but the ALJ determined that Plaintiff had the residual functional capacity (RFC)

to perform light work except that the work should not require exposure to unprotected heights or hazardous machinery. *Id.* at 19. He cannot climb ladders, ropes, or scaffolds, and cannot be exposed to extremes of heat. *Id.* The ALJ also found that Plaintiff cannot perform commercial driving and is restricted to simple, well-defined work tasks with simple job instructions and simple work decisions. *Id.* Plaintiff can adapt to a work routine provided the work is not highly exacting, complex, or dangerous and can adjust to gradual change in routine. *Id.* Although unable to perform past relevant work as a structural steel worker, the ALJ concluded that Plaintiff is capable of performing a significant number of jobs in the national economy. *Id.* at 22-23. In reaching this conclusion, the ALJ relied on testimony of a vocational expert. *Id.* at 23-24.

Plaintiff filed a request for review with the Appeals Council. The Appeals Council denied his request. Plaintiff then filed the instant complaint asserting (1) the state agency failed to comply with 42 U.S.C. § 421(h) by not having the case reviewed by a psychologist or psychiatrist; (2) the ALJ erred in failing to analyze Plaintiff's mental impairments pursuant to 20 C.F.R. § 404.1520a; (3) the ALJ failed to properly evaluate Plaintiff's subjective complaints and credibility; (4) the ALJ's RFC is not supported by substantial evidence; and (5) the ALJ failed to pose a hypothetical question to the vocational expert including all of the limitations supported by the record.

## Law and Analysis

The federal district court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the court determines the

Commissioner's decision to be supported by substantial evidence, then the findings are conclusive and the court must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g). This standard requires supporting evidence that is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court is not permitted to "reweigh the evidence in the record, nor try any issues *de novo*, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'" *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

Because the instant lawsuit involves a "medical improvement" case rather than a claim for initial disability benefits, the Commissioner must prove in all relevant respects that the person is no longer disabled. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). In determining whether a claimant has experienced medical improvement, the Commissioner applies an eight-step sequential evaluation process. *Griego v. Sullivan*, 940 F.2d 942, 944 n.1 (5th Cir. 1991). In conducting this analysis, the Commissioner bears the burden of proof and may terminate benefits if substantial evidence demonstrates (1) that the claimant has undergone medical improvement related to his ability to do work; and (2) that the claimant is currently able to engage in

substantial gainful activity.  *Id.* at 943-44.

**Compliance with 42 U.S.C. § 421(h)**

Plaintiff argues that he suffers from memory and concentration limitations as a result of brain surgery.  Plaintiff characterizes his condition as a mental impairment with consequent mental limitations.  Therefore, he asserts that the state agency should have obtained the opinion of a qualified psychiatrist or psychologist pursuant to 42 U.S.C. § 421(h) as part of the evaluation process.

As an initial matter, Plaintiff's invocation of § 421(h) is misplaced.  The statutory directive found at § 421(h) is inapplicable at the ALJ level.  *See Plummer v. Apfel*, 186 F.3d 422, 433 (3d Cir. 1999); *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *Rodgers v. Colvin*, 2016 WL 4432678, at *9 (D.Conn. Aug. 17, 2016); *McClure v. Astrue*, 2012 WL 5467761, at *6 (W.D.Pa. Nov. 9, 2012); *Dougherty v. Astrue*, 715 F.2d 572, 585-86 (D.De. 2010).  Section 421(h) applies only to an "initial determination".  *Id.*  When assessing a claimant's mental condition and limitations, the ALJ has greater flexibility than prescribed in § 421(h) and has a duty to consider all evidence of impairments in the record.  *Plummer*, 186 F.3d at 433.  Ultimately, judicial review is limited to the final decision of the SSA.  42 U.S.C. § 405(g).  Once the claimant requests Appeals Council review of the ALJ's decision and the Appeals Council denies review of the decision, then the ALJ's decision becomes the final decision of the Agency for purposes of judicial review.  *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).  The state agency's decision not to obtain the opinion of a psychologist or psychiatrist at the initial determination stage does not constitute a reversible error by the ALJ.

To the extent that Plaintiff contends the ALJ should have ordered a consultative mental

health examination at the hearing level, the Court also finds this contention to be without merit. The ALJ's duty to obtain a consultative examination is triggered when the evidence is insufficient to make an informed decision. 20 C.F.R. § 416.912; *Pierce v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). In this case, the record was sufficient for the ALJ to make a decision without obtaining a consultative examination.

The ALJ concluded that Plaintiff had medically determinable impairments including residuals of craniotomy for glioma resection and seizure disorder. The ALJ determined that these are severe impairments. The ALJ then determined, among other things, that as a result of his impairments Plaintiff "is restricted to simple, well-defined work tasks with simple job instructions and simple work decisions. He can adapt to a work routine provided the work is not highly exacting, complex or dangerous and can adjust to gradual change in routine." Doc. [6] at 19. These restrictions are consistent with the medical record which indicated that as a result of a craniotomy, Plaintiff suffered from seizures. Dr. James Clarkson opined that the seizures may cause Plaintiff "only the most minimal problems" with occasional distraction and momentary absence. The ALJ gave Dr. Clarkson's opinion "significant weight". Doc. [2] at 22. The ALJ also considered Plaintiff's testimony regarding the effects from seizures and concluded that as a residual effect of glioma and seizures, Plaintiff suffers from impaired focus. *Id.* at 21.

Plaintiff fails to point to reliable medical opinion evidence demonstrating that he suffers from a mental impairment. In the absence of a medically determinable impairment, the Commissioner is not required to consider the effects of such an impairment on Plaintiff's work capacity. *See Harrel v. Brown*, 862 F.2d 471, 482 (5th Cir. 1988). The medical evidence tends

to support the ALJ's conclusion that Plaintiff's limitations of impaired focus and concentration result from seizures and not some additional mental impairment. The ALJ took these limitations into account when crafting an RFC. Significantly, Plaintiff did not discuss any problems with depression or mental illness at his hearing before the ALJ. He only testified as to his memory and concentration problems. Although Plaintiff asserts that he suffers from depression and memory loss, he relies on subjective complaints reported to his medical providers. *See Greenspan v. Shalala*, 38 F.3d 232, 237-38 (5th Cir. 1994). He does not cite to any diagnosis or referral for treatment for these alleged mental impairments. *See Villa v. Sullilvan*, 895 F.2d 1019, 1024 (5th Cir. 1990). In a single notation, Dr. Richard Whitlock commented that Plaintiff may benefit from a mild anti-depressant. This single isolated comment is not sufficient to raise a suspicion of a non-exertional impairment. *See Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). By contrast, in a report dated October 15, 2014, Dr. Clarkson noted that Plaintiff's psychiatric assessment was "normal" with "[n]o insomnia, depression, mania or mood swings." Doc. [6] at 286. Although Plaintiff places great stock in the opinions of Dr. Millette and Dr. McCloskey, neither of them opines that memory loss, depression, or any other mental impairment affects Plaintiff's ability to engage in employment activity. To the contrary, their opinions focus on Plaintiff's seizures as the limiting condition. Dr. Millette does not mention either depression or memory loss in his letters. Doc. [6] at 331, 341. Dr. McCloskey does not mention depression at all, but he does relate that Plaintiff's wife reported short-term memory impairment. Doc. [6] at 303-04. Based on the foregoing, the Court concludes that the ALJ did not err in failing to obtain a psychological or psychiatric consultative report.

**Evaluation pursuant to 20 C.F.R. § 404.1520a**

In a closely related issue, Plaintiff argues that the ALJ failed to evaluate his mental impairments under 20 C.F.R. § 404.1520a. As explained above, the medical record does not support Plaintiff's premise that he suffers from a mental impairment. As determined by the ALJ, Plaintiff's problems with focus, distraction, and momentary absence are the result of his seizure disorder. Doc. [6] at 21-22. With respect to alleged depression, the medical record does not indicate any diagnosis or treatment for depression, other than the single notation that Plaintiff might benefit from a mild anti-depressant. At his hearing, Plaintiff did not testify that he suffered from depression. Nor did he attribute his alleged inability to work to depression. *See* Doc. [6] at 34-49. With respect to memory loss, Plaintiff related his memory loss to the seizure disorder. *Id.* at 38-40. Plaintiff indicated that when he is talking to someone and has to stop to ask them what they were talking about, this is caused by a partial seizure. *Id.* 20. As noted earlier, both Dr. Millette and Dr. McClosky attributed Plaintiff's disability to his seizures but did not point to depression or memory loss as the culprit. The ALJ also relied on Dr. Clarkson's opinion that Plaintiff's seizures may cause "momentary absence" and "occasional distraction". Doc. [6] at 21. Because Plaintiff's seizure symptoms do not constitute a separate mental impairment, the ALJ was under no obligation to evaluate Plaintiff's mental impairments pursuant to 20 C.F.R. § 404.1520a. *See Goolsby v. Colvin*, 2016 WL 5390563, at *7 (N.D.Ala. Sept. 27, 2016). Rather, the ALJ properly considered the limiting effects of Plaintiff's seizure disorder on his concentration and focus and then incorporated these into Plaintiff's RFC.

**Credibility Determination**

Plaintiff argues that the ALJ failed to properly evaluate his subjective complaints and

credibility. Specifically, Plaintiff contends that the ALJ focused solely on the medical evidence and the fact that the records from treating providers did not support the frequency of Plaintiff's seizures. Plaintiff further suggests that the ALJ disregarded his statements about the intensity and persistence of pain or other symptoms.

 While the ALJ must consider a claimant's subjective complaints, he is allowed to examine the objective medical evidence to test claimant's credibility. *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985). Subjective evidence of symptoms will not take precedence over conflicting medical evidence. *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989). A claimant's subjective complaints may be discounted by an ALJ if they are inconsistent with other evidence in the record. *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003). Moreover, judgment as to the credibility of testimony is the sole province of the ALJ. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). The Fifth Circuit has held that the ALJ's credibility determination is entitled to considerable deference. *See Falco v. Sullivan*, 27 F.3d 160, 164 (5th Cir. 1994).

 When assessing Plaintiff's credibility, the ALJ considered Plaintiff's daily activities; his statements regarding the location, duration, frequency and intensity of his symptoms; precipitating and aggravating factors (such as stress and wearing a hard hat); and the effectiveness and side effects of medication. Doc. [6] at 20. Ultimately the ALJ found Plaintiff to be partially credible. *Id.* at 21. Although medical evidence demonstrated that Plaintiff developed a seizure disorder, the ALJ noted that the neurologists' treatment notes do not record seizures occurring on a daily basis. The last treatment record from the neurologist in August 2014 reported "well-controlled seizure disorder". *Id.* A medical report dated February 21, 2014, indicated that Plaintiff's last seizure was in 2011. *Id.* at 250. This same report mentioned "rare

8

recurrent seizure activity". *Id.* at 253. The last record from a neurologist to report a seizure was from March 2014. *Id.* at 21, 252. The ALJ also relied on Dr. Clarkson's opinion who concluded that Plaintiff had only minimal problems with occasional distraction and momentary absence that may be seizure equivalents. *Id.* The ALJ took into account Plaintiff's subjective statements regarding his symptoms and assigned restrictions accordingly. The fact that the ALJ found the medical evidence more persuasive than Plaintiff's subjective complaints regarding the frequency of his seizures is precisely the kind of determination that the ALJ is best positioned to make. *Falco*, 27 F.3d at 164. The Court finds that the ALJ properly evaluated Plaintiff's credibility.

**RFC Assessment**

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence. He complains, without much elaboration, that the ALJ rejected the opinions of the treating physicians; that the ALJ relied on the opinions of physicians that were contrary to Plaintiff's testimony; that no state agency psychological consultants reviewed the case or completed mental RFC assessments; and that the RFC assessment was not analyzed on a function-by-function basis.

Dr. McCloskey and Dr. Millette, who were treating neurologists, each indicated that Plaintiff is not capable of engaging in employment activity because of seizures. Doc. [6] at 303-04, 331, 341. The ALJ is free to assign little or no weight to the opinion of any physician for good cause. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000). Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the physician's evidence is conclusory; is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques; or is otherwise unsupported by the evidence. *Id.* A treating physician's opinion may

9

be rejected when the evidence supports a contrary conclusion. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995).

The ALJ did not give controlling weight to treating physicians, Dr. Millette and Dr. McCloskey. Doc. [6] at 22. However, the ALJ stated that the RFC contains restrictions "influenced by Dr. Millette's and Dr. McCloskey's opinions." *Id.* The ALJ explained that their opinions regarding Plaintiff's ability to engage in employment activity are not entitled to controlling weight because the decision whether a person is "disabled" is reserved to the Commissioner. *Id.* The ALJ's finding is consistent with Fifth Circuit precedent which holds that opinions by treating physicians that a claimant is "disabled" or "unable to work" have no special significance. *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). "These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Id.* Accordingly, the ALJ did not err in failing to give controlling weight to this aspect of the treating physicians' opinions when he determined Plaintiff's RFC.

Plaintiff also faults the ALJ because he credited the opinion of physicians that contradicted the testimony of Plaintiff. This simply repeats Plaintiff's earlier argument that the ALJ did not properly evaluate his credibility. As explained previously, the ALJ rejected Plaintiff's subjective complaints to the extent that they were inconsistent with other medical evidence. Doc. [6] at 21; *see Falco*, 27 F.3d at 164. Plaintiff's contention that a state agency psychologist should have conducted an RFC review also has been examined in detail. As explained previously, the ALJ did not err in failing to order a psychological or psychiatric consult because the record was sufficient for the ALJ to make a decision without obtaining a consultative examination.

Plaintiff next argues that the RFC was not examined on a function-by-function basis. Contrary to Plaintiff's argument, the ALJ gave "great weight" to the opinion of Dr. Robert Culpepper, who conducted an RFC evaluation that included a function-by-function analysis. Doc. [6] at 274-81.  A state agency physician's function-by-function RFC may constitute substantial evidence supporting the ALJ's findings.  *See Beck v. Barnhart*, 205 Fed. App'x 207, 213-14 (5th Cir. 2006); *Kinser v. Colvin*, 2014 WL 6973022, at *3 (N.D.Tex. Dec. 9, 2014); *Brown v. Astrue*, 2009 WL 64117, at *4 (N.D. Tex. Jan. 12, 2009); *Zeno v. Barnhart*, 2005 WL 58822, at *9 (E.D. Tex. Feb. 4, 2005).  In his report, Dr. Culpepper concluded that Plaintiff showed significant medical improvement since the initial decision.  *Id.* at 279, 281.

In sum the ALJ's RFC assessment is supported by substantial evidence in that the ALJ relied on medical evidence from Dr Millette, Dr. McCloskey, Dr. Clarkson, and Dr. Culpepper, as well as the testimony of Plaintiff, when assigning limitations.  The ALJ credited Plaintiff's testimony regarding impaired focus to the extent that he restricted Plaintiff "to simple, well-defined work tasks with simple job instructions and simple work decisions.  He can adapt to a work routine provided the work is not highly exacting, complex or dangerous and can adjust to gradual change in routine."  Doc. [6] at 19.  This Court will not re-weigh the evidence nor examine Plaintiff's credibility in evaluating the ALJ's RFC assessment.

**<u>Vocational Expert Hypothetical</u>**

Plaintiff argues that the ALJ failed to incorporate all of his impairments in the hypothetical posed to the vocational expert.  Specifically, Plaintiff asserts that the hypothetical should have included additional symptoms and limitations based on Plaintiff's testimony regarding frequency of seizures, headaches, memory problems, pain, and problems concentrating.

Plaintiff concedes that the hypothetical posed by the ALJ tracked the RFC.  Plaintiff attempts to bootstrap earlier arguments regarding mental limitations and subjective complaints to demonstrate that the ALJ somehow erred with respect to the hypothetical.  As explained previously, the ALJ properly evaluated and discounted Plaintiff's credibility and subjective complaints.  Also as explained earlier, the RFC is supported by substantial evidence;  therefore, by extension the hypothetical posed by the ALJ based on this RFC was proper.

IT IS THEREFORE ORDERED AND ADJUDGED that the decision of the Commissioner is AFFIRMED and Plaintiff's complaint is dismissed with prejudice.

SO ORDERED, this the 24th day of February, 2017.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE